NEIGER LLP
317 Madison Avenue, 21st Floor
New York, New York 10017
Tel.: (212) 267-7342
Fax: (212) 918-3427
Edward E. Neiger, Esq.
Jonathan S. Bodner, Esq.
*Counsel to Jil Mazer-Marino, Esq.,*
*Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>NATIONAL SPORTS ATTRACTION, LLC, *et al.*,<br><br>      Debtor. | Chapter 7<br><br>Case No. 09-11162(RDD)<br>(Jointly Administered) |
| JIL MAZER-MARINO, CHAPTER 7 TRUSTEE,<br><br>      Plaintiff,<br><br> v.<br><br>PHILIP SCHWALB,<br><br>      Defendant. | Adv. Pro. No. 11-01630 (RDD) |

**AMENDED COMPLAINT**

Jil Mazer-Marino, the duly appointed chapter 7 trustee (the "Trustee") for the jointly administered bankruptcy cases of National Sports Attraction, LLC *d/b/a* Sports Museum Of America *d/b/a* National Sports Museum ("National Sports Attraction") and National Sports Museum Management, LLC ("National Sports Management") (collectively, the "Debtors")[1], by and through her special counsel, Neiger LLP, for her amended complaint (the "Amended Complaint") against Philip Schwalb (the "Defendant"), alleges upon information and belief:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (B), (F), (H) and (O).

2. This adversary proceeding is a core proceeding as that term is defined in 28 U.S.C. § 157(b).

3. This adversary proceeding arises under the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") and arises in and relates to the Debtors' chapter 7 cases pending in this district.

4. Venue is proper before this Court pursuant to 28 U.S.C. § 1409.

## THE PARTIES

5. On March 13, 2009, National Sports Attraction filed a voluntary chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York, case number 09-11162 (RDD).

---

[1] On March 30, 2009, the Court entered an Order pursuant to Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 1015 authorizing the joint administration of the National Sports Attraction and National Sports Management bankruptcy cases.

6. On March 14, 2009, National Sports Management filed a voluntary chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York, case number 09-11163(RDD). March 13, 2009 and March 14, 2009, are collectively referred to herein as the "Petition Dates."

7. National Sports Attraction is a wholly owned subsidiary of National Sports Management. *See* Schedule B of National Sports Management's bankruptcy petition, which lists a 100% membership interest in National Sports Attraction.[2]

8. On March 30, 2009, the Court entered an Order (the "March 30, 2009 Order") pursuant to Bankruptcy Rule 1015 authorizing the joint administration of National Sports Attraction and National Sports Management. The March 30, 2009 Order procedurally consolidated the Debtors' cases for joint administration purposes with pleadings to be captioned "In re National Sports Attraction, LLC, et al, Case No. 09-11162(RDD) (Jointly Administered)."

9. On or about March 16, 2009, the Office of the United States Trustee appointed the Trustee to serve as the chapter 7 trustee for the Debtors' chapter 7 bankruptcy estates.

10. Upon information and belief, the Defendant is an individual with an address of 30 Constitution Way, No. 404, Jersey City, New Jersey 07305.

11. The Defendant served as Chief Executive Officer ("CEO") of National Sports Attraction at all relevant times and through September 15, 2008, and was a Director of National Sports Attraction at all relevant times and through the Petition Dates. The Defendant also served as CEO and Secretary of National Sports Management at all relevant times and through September 15, 2008, and was a Director of National Sports Management at all relevant times and through the Petition Dates.

---

[2] While the Debtors appeared to operate as corporations, technically, the Debtors were Limited Liability Companies organized under the laws of the State of New York and governed by the New York Limited Liability Company Law, N.Y. LTD. LIAB. CO. § 101, *et seq.*

12. At all relevant times, the Defendant was an "insider," as that term is defined under 11 U.S.C. § 101(31).

## FACTUAL BACKGROUND

13. Prior to the Petition Dates, the Debtors operated a for-profit museum (the "Museum") located at 26 Broadway, New York, New York that was dedicated to the history and cultural significance of sports in New York City, America and the World.

14. The Museum contained exhibits, including interactive exhibits and sports memorabilia exhibits. The Museum also had a retail shop in which the Debtors sold various merchandise and sports memorabilia. Further, the Museum had a banquet hall for events which featured appearances by professional sports teams, past and present professional athletes, and which was used for corporate sponsored events.

15. To initially fund the Museum, the Debtors raised approximately $100 million. The $100 million was comprised of approximately (i) $6 million raised in equity from 2003-2005, the pre-development phase, and (ii) $94 million raised in 2006 for development of the Museum (the "Development Raise").[3] As of August 1, 2006, the Debtors had at least $57 million in debt which they had no way of repaying.

---

[3] The Development Raise included obtaining $57,000,000, pursuant to a building loan agreement dated August 1, 2006 (the "August 1, 2006 Loan Agreement"), in which New York Liberty Development Corporation ("New York Liberty") loaned $57,000,000 to National Sports Attraction to be used for construction of the Museum in exchange for bonds (the "Bonds") issued by National Sports Attraction (the "Bond Offering") on or about August 17, 2006. The funds raised through the Bond Offering (the "Bond Funds") were to be used for: (i) construction of the Museum subsequent to January 1, 2007; (ii) bond financing; (iii) capitalized interest; and (iv) a debt service reserve. The Bond Funds were maintained in the following Bank of New York Mellon accounts: (i) Project Fund Account No. 264418; (ii) Construction Account No. 264421; (iii) Debt Service Reserve - A Account No. 264495; (iv) Debt Service Reserve - B Account No. 264424; (v) Equity Construction Account No. 264454; (vi) Cap I - A Account No. 264455; (vii) Cap I - B Account No. 264474; and (viii) Cost of Issuance Account No. 264479. The Bond Funds were generally barred from being used on movables such as furniture, general operations, and other non-construction costs. The Bank of New York Mellon served as the indenture trustee for the Bonds pursuant to an indenture dated August 1, 2006.

16. The Debtors' presentations projected "remarkable financial results in record time."

17. In May 2008, the Debtors opened the Museum.

18. During the initial planning and pre-development phase from 2003 to 2005, the construction and development phase from 2006 to May 2008, and from opening the Museum through the Petition Dates, the management and oversight of Debtors were entirely dysfunctional, characterized by the Debtors' directors' and officers' poor business decision making and blind neglect to the operations and management of the Debtors. As a result, they did not provide any value to the Museum.

19. Upon information and belief, and at all relevant times, the Debtors' directors and officers had actual and/or constructive knowledge that the Debtors were incurring substantial operating losses.

20. Further, upon information and belief, and at all relevant times, many of the Debtors' directors and officers including the Defendant took handsome salaries, and regularly used the Debtors' corporate credit cards for personal use including meals, groceries, clothing, travel and leisure.

21. By late 2008, as evidenced by, among other things, numerous unpaid bills, the Debtors were further rendered and remained insolvent at all times thereafter. For example on September 2, 2008, Bank of New York Mellon, indenture trustee for the Bonds, sent correspondence to the Debtors indicating that payments due under the August 1, 2006 Loan Agreement were in default as of June 1, 2008, including $1,750,000 due representing payments for the months of June through September 2008.

22. Through a combination of errors, omissions, neglect, mismanagement, and self dealing, the Debtors' directors and officers, including the Defendant, ran the Debtors, <u>and in less than two years, $100 million</u>, into the ground, while enriching themselves, including by the Transfers (as defined below) at the expense of the Debtors and the Debtors' creditors.

23. Upon information and belief, during the one (1) year period prior to the Petition Dates, the Defendant received one or more transfers totaling at least $325,652.55 (the "Insider Preferential Transfers") from the Debtors.

24. Upon information and belief, during the two (2) years period prior to the Petition Dates, the Defendant received one or more transfers totaling at least $650,652.39 (the "Fraudulent Transfers") from the Debtors.

25. The Insider Preferential Transfer and the Fraudulent Transfers are collectively referred to herein as the "Transfers". A schedule of the Transfers is attached hereto as <u>Exhibit A</u>.

26. The Debtors' creditors will receive far less than 100% distributions in these cases.

## **COUNT I**

**(Avoidance and Recovery of Insider Preferential Transfers
Pursuant to 11 U.S.C. §§ 547 and 550(a))**

27. The Trustee repeats the allegations set forth in all paragraphs of this Amended Complaint as if fully set forth herein.

28. The Defendant was an insider of the Debtors at the time of each of the Insider Preferential Transfers.

29. The Insider Preferential Transfers constitute transfers of the Debtors' interests in property to or for the benefit of the Defendant.

30. The Defendant was a creditor of the Debtors at the time of the Insider Preferential Transfers.

31. The Insider Preferential Transfers were made for or on account of antecedent debt owed by the Debtors to the Defendant before each of the Insider Preferential Transfers were made.

32. The Debtors were insolvent on the dates of each of the Insider Preferential Transfers.

33. The Insider Preferential Transfers were made within the one year before the Petition Dates.

34. The Insider Preferential Transfers enabled the Defendant to receive more than the Defendant would receive under chapter 7 of this title, the Insider Preferential Transfers had not been made, and the Defendant received payments for such debts to the extent provided by the provisions under the Bankruptcy Code.

WHEREFORE, the Trustee demands judgment against the Defendant on Count I of this Amended Complaint:

(a) For avoidance of the Insider Preferential Transfers pursuant to 11 U.S.C. § 547;

(b) For recovery of the Insider Preferential Transfers, or the value thereof, from the Defendant for the benefit of the Debtors' estates pursuant to 11 U.S.C. § 550;

(c) For attorneys' fees and costs; and

(d) For such other and further relief as the Court deems just and proper.

## COUNT II

**(Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548 and 550)**

35. The Trustee repeats the allegations set forth in all prior paragraphs of this Amended Complaint as if fully set forth herein.

36. The Defendant was an insider of the Debtors at the time of each of the Fraudulent Transfers.

37. The Fraudulent Transfers constitutes transfers of the Debtors' interests in property.

38. The Debtors' made the Fraudulent Transfers with the actual intent to hinder, delay, or defraud entities to which the Debtors were or became, on or after the date of the Fraudulent Transfers, indebted.

39. The Debtors did not receive reasonably equivalent value in exchange for the Fraudulent Transfers.

40. At the time that the Fraudulent Transfers were made, granted, ratified, reaffirmed, or confirmed, the Debtors either: (i) were insolvent or became insolvent as a result of the Fraudulent Transfers; (ii) were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with such Debtors was an unreasonably small capital; (iii) intended to incur, or believed that they would incur, debts that would be beyond their ability to pay as such debts matured; and/or (iv) made the Fraudulent Transfers to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

41. The Fraudulent Transfers (including, but not limited to, interest, principal, or other payments made by, on account of, or based on the existence of the Fraudulent Transfers prior or subsequent to the Petition Dates) should be avoided and recovered pursuant to 11 U.S.C. §§ 548 and 550.

WHEREFORE, the Trustee seeks judgment on Count II of this Amended Complaint:

(a) For avoidance of the Fraudulent Transfers pursuant to 11 U.S.C. § 548;

(b) For recovery of the Fraudulent Transfers, or the value thereof, from the Defendant for the benefit of the Debtors' estates pursuant to 11 U.S.C. § 550;

(c) For attorneys' fees and costs; and

(d) For such other and further relief as the Court deems just and proper.

## COUNT III

**(Avoidance and Recovery of Fraudulent Transfers Pursuant to N.Y. DEBT. & CRED. §§ 273, 274, 275, 276, 278 and 279, and 11 U.S.C. §§ 544 and 550)**

42. The Trustee repeats the allegations set forth in all prior paragraphs of this Amended Complaint as if fully set forth herein.

43. The Debtors received less than reasonably equivalent value in exchange for the Fraudulent Transfers.

44. At the time that the Fraudulent Transfers were made, granted, ratified, reaffirmed, or confirmed, the Debtors either: (i) were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors was unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed, or reasonably should have believed that the Debtors would incur, debts that would be beyond the Debtors' abilities to pay as such debts matured.

45. At the time of the Fraudulent Transfers, the Debtors had creditors whose claims were matured or which subsequently matured.

46. The Fraudulent Transfers were made with actual intent to hinder, delay, or defraud either present and/or future creditors of the Debtors.

47. The Fraudulent Transfers (including, but not limited to, interest, principal, or other payments made by, on account of, or based on the existence of the Fraudulent Transfers prior or subsequent to the Petition Dates) should be avoided and recovered pursuant to N.Y. DEBT. & CRED. §§ 273, 274, 275, 276, 278 and 279, and 11 U.S.C. §§ 544 and 550.

WHEREFORE, the Trustee seeks judgment on Count III of this Amended Complaint:

(a) For avoidance of the Fraudulent Transfers pursuant to 11 U.S.C. § 544 and N.Y. DEBT. & CRED. §§ 273, 274, 275, 276, 278 and 279;

(b) For recovery of the Fraudulent Transfers, or the value thereof, from the Defendant for the benefit of the Debtors' estates pursuant to 11 U.S.C. § 550;

(c) For attorneys' fees and costs; and

(d) For such other and further relief as the Court deems just and proper.

## COUNT IV

### (Turnover and Accounting Pursuant to 11 U.S.C. § 542)

48. The Trustee repeats the allegations set forth in all prior paragraphs of this Amended Complaint as if fully set forth herein.

49. Upon information and belief, the Defendant is in possession of property of the Debtors' estates, payments derived from property that would constitute property of the Debtors' estates, and/or has converted property that would constitute property of the Debtors' estates to its own use.

50. Pursuant to 11 U.S.C. § 542, the Trustee is entitled to an accounting from the Defendant as to all property in the Defendant's possession relating to the Transfers.

51. Pursuant to 11 U.S.C. § 542, the Trustee is entitled to turnover from the Defendant of all property that would constitute property of the Debtors' estates, or the proceeds therefrom, in the Defendant's possession.

WHEREFORE, the Trustee seeks judgment on Count IV of this Amended Complaint:

(a) For an accounting of all property in the Defendant's possession relating to the Transfers;

(b) For turnover of all property of the Debtors' estates and/or the proceeds therefrom;

(c) For attorneys fees and costs; and

(d) For such other and further relief as the Court deems just and proper.

## COUNT V

### (Disallowance of Claim Pursuant to
### 11 U.S.C. §§ 105, 502, 506, 542, 544, 547 and 550,
### and Bankruptcy Rules 3007, 3012 and 7001)

52. The Trustee repeats the allegations set forth in all prior paragraphs of this Amended Complaint as if fully set forth herein.

53. The Defendant may have filed, or may file in the future, one or more proofs of claim against the Debtors' estates (the "Claims").

54. The Transfers to the Defendant are avoidable and subject to recovery under 11 U.S.C. §§ 544, 547, 548 and 550.

55. Pursuant to the applicable provisions of the Bankruptcy Code, including, but not limited to, 11 U.S.C. §§ 502(d) and 506, and Bankruptcy Rules 3007, 3012 and 7001, the Claims must be disallowed because the Defendant is an individual from whom property is subject to avoidance and recovery under 11 U.S.C. §§ 542, 544, 547, 548 and 550.

WHEREFORE, the Trustee demands judgment against the Defendant on Count V of this Amended Complaint:

(a) Disallowing the Defendant's Claims pursuant to 11 U.S.C. § 502(d); and

(b) For such other and further relief as the Court deems just and appropriate.

## RESERVATION OF RIGHTS

56. During the course of this adversary proceeding, the Trustee may learn through discovery or otherwise of additional Insider Preferential Transfers, Fraudulent Transfers, or otherwise avoidable transfers made to the Defendant.

57. It is the Trustee's intention to avoid and recover all Insider Preferential Transfers, Fraudulent Transfers, and otherwise avoidable transfers of the Debtors' interests in property made to or for the benefit of the Defendant or any other transferee.

58. The Trustee reserves his right to amend this Amended Complaint to include: (i) further information regarding the Insider Preferential Transfers or Fraudulent Transfers; (ii) additional Insider Preferential Transfers or Fraudulent Transfers; (iii) modifications or revisions to the Defendant's name; (iv) additional defendants; and/or (v) additional causes of action including, but not limited to, those arising under 11 U.S.C. §§ 542, 544, 545, 547, 548, 549 and 550 (collectively, the "Amendments"). The Amendments shall relate back to this Amended Complaint and the original complaint filed in this adversary proceeding.

Dated: New York, New York
      July 15, 2011

NEIGER LLP
Attorneys for Jil Mazer-Marino,
Chapter 7 Trustee

By: /s/ *Edward E. Neiger,*
    Edward E. Neiger, Esq.
    Jonathan S. Bodner, Esq.
    317 Madison Avenue, 21st Floor
    New York, New York 10017
    Telephone: (212) 267-7342
    Facsimile: (212) 918-3427

# EXHIBIT A

| Check/Wire Date | Check/Wire No. | Amount |
|---|---|---|
| TBP | TBP | $595.71 |
| TBP | TBP | $57.00 |
| 03/15/07 | TBP | $13,541.66 |
| 03/31/07 | TBP | $13,541.66 |
| 04/15/07 | TBP | $13,541.66 |
| 04/30/07 | TBP | $13,541.66 |
| 05/15/07 | TBP | $13,541.66 |
| 05/31/07 | TBP | $13,541.66 |
| 06/15/07 | TBP | $13,541.66 |
| 06/30/07 | TBP | $13,541.66 |
| 07/15/07 | TBP | $13,541.66 |
| 07/31/07 | TBP | $13,541.66 |
| 08/15/07 | TBP | $13,541.66 |
| 08/31/07 | TBP | $13,541.66 |
| 09/15/07 | TBP | $13,541.66 |
| 09/30/07 | TBP | $13,541.66 |
| 10/15/07 | TBP | $13,541.66 |
| 10/31/07 | TBP | $13,541.66 |
| 11/15/07 | TBP | $13,541.66 |
| 11/30/07 | TBP | $13,541.66 |
| 12/15/07 | TBP | $13,541.66 |
| 12/31/07 | TBP | $13,541.66 |
| 01/15/08 | TBP | $13,541.66 |
| 01/31/08 | TBP | $13,541.66 |
| 02/15/08 | TBP | $13,541.66 |
| 02/28/08 | TBP | $13,541.66 |
| 03/15/08 | TBP | $13,541.66 |
| 03/31/08 | TBP | $13,541.66 |
| 04/15/08 | TBP | $13,541.66 |
| 04/30/08 | TBP | $13,541.66 |
| 05/15/08 | TBP | $13,541.66 |
| 05/31/08 | TBP | $13,541.66 |
| 06/15/08 | TBP | $13,541.66 |
| 06/30/08 | TBP | $13,541.66 |
| 07/15/08 | TBP | $13,541.66 |
| 07/31/08 | TBP | $13,541.66 |
| 08/15/08 | TBP | $13,541.66 |
| 08/31/08 | TBP | $13,541.66 |
| 09/15/08 | TBP | $13,541.66 |
| 09/30/08 | TBP | $13,541.66 |
| 10/15/08 | TBP | $13,541.66 |
| 10/31/08 | TBP | $13,541.66 |
| 11/15/08 | TBP | $13,541.66 |
| 11/30/08 | TBP | $13,541.66 |
| 12/15/08 | TBP | $13,541.66 |
| 12/31/08 | TBP | $13,541.66 |

| Date | Type | Amount |
|---|---|---|
| 01/15/09 | TBP | $13,541.66 |
| 01/30/09 | TBP | $13,541.66 |
| 02/15/09 | TBP | $13,541.66 |
| 02/28/09 | TBP | $13,541.66 |
| | Total: | $650,652.39 |